WILBUR GLENN VOLIVA, Appellant, *vs.* FRANK B. COOK, Appellee.

*Opinion filed February 21, 1914—Rehearing denied April 10, 1914.*

CONTRACTS—*when a party cannot insist upon rescission of contract.* A party cannot insist, in equity, upon the rescission of a contract for the sale of land upon the ground that the other party did not comply with a provision requiring him to have a factory, employing one hundred men, in operation by a certain date, where the failure to perform such condition on time was due to the complainant's own hostility to the enterprise and his active efforts to prevent the contract from being carried out.

APPEAL from the Circuit Court of Lake county; the Hon. ARTHUR H. FROST, Judge, presiding.

FELSENTHAL & BECKWITH, and GEORGE W. FIELD, for appellant.

JONES, ADDINGTON & AMES, and CHYTRAUS, HEALY & FROST, (KEENE H. ADDINGTON, AXEL CHYTRAUS, and ALBERT F. MECKLENBURGER, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This was a bill filed by Wilbur Glenn Voliva, assignee of Gus D. Thomas, receiver of the estate of John Alexander Dowie, against Frank B. Cook, praying for the rescission of a contract between said Cook and Thomas, and for an order requiring said Cook to cause the Chicago Title and Trust Company to deliver to appellant a deed held in escrow by said trust company to the premises the sale of which was provided for in the contract sought to be rescinded. After the issues were joined the cause was referred to a master in chancery to take the testimony and report his conclusions. The master reported finding the allegations of the bill true, and recommended a decree rescinding the contract upon the payment to Cook of $10,202.23, which was found to be the amount he had paid out

on account of said contract. The circuit court sustained exceptions to the master's report and entered a decree dismissing the bill for want of equity, and complainant below has brought the case to this court by an appeal.

The facts are as follows: For several years prior to the date of the contract in question appellee was engaged in manufacturing telephone protective devices, and his factory was located at No. 900 West Lake street, in Chicago. After the death of John Alexander Dowie the property which during his lifetime was under his control was managed by a receiver. At the time the contract in question was executed Gus D. Thomas was acting as such receiver. Appellee and said Thomas, with the approval of the court wherein the receivership was being administered, entered into a contract, by the terms of which said receiver contracted to sell appellee certain premises described in said contract, in Zion City, for the sum of $9000, to be paid in installments. The last installment of $500 became due on December 15, 1910. Clauses 4 and 5 of said contract are as follows:

"*Fourth*—Said Cook agrees that prior to the time when he shall be required by this contract to make the last payment for said real estate he will remove his factory, now located at No. 900 West Lake street, Chicago, Illinois, to said Zion City, and will at the time of such removal have employed in his factory so located at Zion City one hundred employees; it being understood, however, that prompt performance by said Cook of this provision is to be excused by all delays which said Cook could not reasonably avoid, including, among others, labor difficulties, and particularly labor difficulties arising from inability to obtain and retain at said Zion City the labor required by said Cook at said Zion City; it being further understood that in the event that said Cook shall fail to perform this obligation of this contract, then said Thomas may, at his option, rescind this contract and receive back said escrow deed upon

return to said Cook of all moneys paid under this contract and all moneys spent by said Cook for which he can show legitimate bills in improving the real estate hereinbefore described and in equipping the same for factory purposes.

"*Fifth*—Said Thomas hereby agrees to give to said Cook immediate possession of said real estate, and said Thomas likewise agrees to maintain said Cook in such possession until the complete performance of this contract or until the same shall be canceled pursuant to the option hereinbefore contained."

The last payment of the purchase money under this contract was made to the receiver on the day the same became due. The appellant, Voliva, was elected successor to John Alexander Dowie, and succeeded, by assignment, to the Cook contract. The real estate that was purchased by Cook was part of the Dowie holdings, and the same passed with other assets, through receivership proceedings, to the appellant. During his lifetime Dowie proclaimed himself as "Elijah, the Restorer, Messenger of the Covenant and Prophet foretold by Moses." One of the essential conditions exacted of every member of the church was absolute obedience to Dowie. Appellant, as successor of Dowie, continues to exercise the same authority and control over his disciples that were exercised by Dowie. The evidence is uncontradicted that appellant was from the beginning seriously opposed to appellee's factory coming to Zion City. The so-called Independent party in Zion City is made up of former disciples who have renounced their allegiance to the church, re-inforced by outsiders who have come in for business purposes and have never allied themselves with the church. After Dowie's death and during the receivership a number of outside business enterprises came to Zion City. Real estate could then be bought by outsiders for business purposes, and during this time persons other than the appellee did purchase sites and established factories thereon. Among others who came in during this time were Marshall

Field & Co., which has a lace plant employing between seven and eight hundred men and women; the National Office Supply Company, employing between thirty and forty people; and Simmons & Beebe, who have a block and erected four stores. A Methodist church was also established, and a State bank, and other enterprises. At the time the last payment fell due, December 15, 1910, conditions in Zion City were such that appellee regarded it as unsafe to move his factory at that time. Near this time appellee had a conversation with Thomas, the receiver, and conditions in Zion City were fully discussed. Thomas agreed with appellee that conditions were very unfavorable, owing to the opposition of Voliva, for a removal of the factory at that time and advised that no attempt be made to remove the factory at that time. At the time the last installment was accepted by the receiver he knew the factory had not been removed and that it would necessarily be a considerable time before the removal could be effected. A building on the premises sold to appellee had previously been used as a print shop. After the contract was entered into, appellee set a small force of men to work changing the premises and preparing them for the installation of his factory. There was only a small force employed, however, and on December 15, 1910, the premises were not ready for the installation of appellee's factory. At the municipal election held in Zion City in the spring of 1911 the Independents were successful, and that party has remained in the ascendency at each succeeding election down to the time of the hearing of this case. The question whether appellee should be permitted to remove his factory to Zion City entered more or less into the municipal campaign. There was undoubtedly quite a sentiment among the business men of Zion City in favor of appellee's factory being located in that city, but until after the election in the spring of 1911 great difficulty had been experienced by appellee in securing men to work in a factory located in Zion City. To secure

men appellee advertised, and his efforts were supplemented by organizations of local business men who were friendly to the location of the factory. The opposition of appellant was unabated. When appellant first learned that appellee had purchased this factory site he was then engaged in a school election contest. He said, "I am a great deal more interested in that announcement than I am in winning this school election," and "I will see that Cook never gets out here with his factory." From that time forward, both publicly and privately, he threatened to keep appellee out. In fact, he said he was going to drive all outsiders out so that appellee could not have any employees. He used such terms as "freeze out," "squeeze out" and "crush out," and from the pulpit he called upon his disciples to pledge themselves to aid him in preventing appellee from establishing his factory and required an express pledge of support from each individual member. He advised his adherents not to patronize or in any way encourage appellee or any other outsider, and exhorted them to stand by him and help smash them, and not to let up until they had been driven out of town. In his public sermons in the tabernacle appellant repeatedly said that Cook should not move his factory to Zion City and should not operate it, and that if he did so it would be over his (Voliva's) dead body. He said he would ruin outsiders financially, and reminded his adherents that "you must obey me," and insisted that the flag of Zion should be planted on every foot of Zion territory. He told his people that Cook was an enemy of Zion, and that if "Cook thinks he can come into Zion City and bring two or three hundred of his stink-pots with him he is badly mistaken;" that he would "skin him alive and hang his hide on the fence to dry" if he ever came to Zion City with his factory. These and similar expressions were repeated many times. He admonished his adherents to stop and consider their sons and daughters if such as Cook and his employees, who had been located in the red-light district of

Chicago, were permitted to come to Zion. He said that he would not permit them to come, and that "he did not want the dirty, filthy, damnable lot here, and they knew it." These and many other similar charges and threats were made by appellant. They are proven by many witnesses and contradicted by none. The receiver, Thomas, lived in Zion City and was well aware of the opposition to appellee's removal to that city. He was apparently friendly to appellee and favorable to the establishment of the enterprise in Zion City, but knowing the conditions and difficulties confronting appellee he advised against any attempt to establish the factory until conditions improved. A committee of the Business Men's Association called upon appellee to encourage him not to abandon the idea of coming to Zion City under the belief that the entire population was against him. This committee was composed of Independents, and in addition to the commercial advantages of having a factory located in Zion City they also believed that it would strengthen the Independents in municipal elections; but appellee was not influenced by the argument based on the political effect of his locating in Zion City and stated frankly to the committee that he had no disposition to want to antagonize appellant in local political matters. As early as July, 1910, by arrangement of Thomas appellee and appellant had an interview, in which appellee sought to enlist appellant's friendly co-operation in locating his factory in Zion City. Appellant answered his appeal by telling appellee "I don't want you here," and advised appellee that he would not be able to get labor to carry on his factory. The only concession that appellant would make was, that he would try to arrange to take the property off of appellee's hands without loss if he would give up his purpose to locate the factory.

The sole ground upon which appellant seeks a rescission of the contract is that appellee did not have his factory established, employing one hundred men, on the 15th day of

December, 1910. Appellee's answer sets up the opposition of appellant, and his inability to secure labor in consequence thereof, as an excuse for not complying literally with the contract in respect to the date of locating his factory in Zion City. The answer also alleges that the contract was not assignable; that the clause providing for a forfeiture involved an element of personal trust and confidence in Thomas, the receiver, which could not be assigned to appellant without appellee's assent. It is also contended by appellee that there was a waiver by Thomas, the receiver, of literal compliance with the contract in respect to the time when the factory should be established in Zion City. If any one of the defenses interposed is sustained, it necessarily follows that the decree below dismissing appellant's bill should be affirmed.

It would be a strange application of the doctrine of a court of equity if appellant were permitted to take advantage of the delay in performing this contract when by the uncontradicted evidence he did everything in his power, short of physical violence, to intimidate appellee and prevent his carrying out the contract. Assuming, without deciding, that a court of equity has jurisdiction to grant the relief sought, and also that the right to declare a forfeiture under this contract passed to appellant by the assignment, we are aware of no principle of equity under which appellant can obtain relief against conditions brought about by his own willful and improper conduct. The equitable principles applicable to a rescission of contracts are not unlike those which are applied in specific performance. The jurisdiction is ordinarily invoked where there has been some fraud, accident or mistake in connection with the execution of the contract which gives rise to an equity in favor of the party injured. Rescission in the case at bar does not proceed upon either of those grounds. If a right of rescission exists at all, it is because the contract provided that "in the event that said Cook shall fail to perform this ob-

ligation of this contract, then said Thomas may, at his option, rescind this contract and receive back said escrow deed," etc. In no event can the appellant have any better standing in a court of equity to rescind this contract than Thomas would have had had no assignment taken place. The contract provides that prompt performance by Cook of the provision requiring him to locate his factory in Zion City by the 15th day of December, 1910, was to be excused by all delays which said Cook could not reasonably avoid, "including, among others, labor difficulties, and particularly labor difficulties arising from inability to obtain and retain at said Zion City the labor required by said Cook at said Zion City." The evidence shows that the real reason for the delay was the difficulty in obtaining labor, and these difficulties were largely due to the persistent opposition of appellant to appellee's enterprise. Manifestly, no court of equity would have granted appellant a decree for the specific performance of this contract and compelled appellee to move his factory to Zion City in view of the attitude appellant assumed in regard to his coming. Had appellant filed a bill for such purpose he would have been turned away by a court of equity for the reason that he had himself prevented appellee from complying with his contract. When he comes into a court of equity for the purpose of rescinding the contract he should come with clean hands and be able to show that the failure to comply with the terms of the contract was not the result of his own wrongdoing.

In view of the conclusion we have reached in respect to this one question it is not necessary to extend this opinion to discuss other matters which have been argued in the briefs.

The decree of the circuit court of Lake county dismissing the bill for want of equity will be affirmed.

*Decree affirmed.*